**SCHLEIER LAW OFFICES, P.C.**
3101 N. Central Avenue
Suite 1090
Phoenix, Arizona 85012
Telephone: (602) 277-0157
Facsimile: (602) 230-9250

TOD F. SCHLEIER, ESQ. #004612
Tod@SchleierLaw.com
BRADLEY H. SCHLEIER, ESQ. #011696
Brad@SchleierLaw.com

*Attorneys for Plaintiff Timothy Caziarc*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Timothy Caziarc, a single man, | No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| LGI Homes, Inc., a Delaware corporation, | **JURY TRIAL DEMAND** |
| Defendant. | |

Plaintiff Timothy Caziarc, by and through counsel, and for Plaintiff's Complaint against Defendant alleges as follows.

**JURISDICTION AND VENUE**

1.  This is an action against LGI Homes, Inc. ("LGI") to remedy a violation of the Fair Wages and Healthy Families Act, A.R.S. §23-374 ("FWHFA").

2.  Jurisdiction is appropriate due to the Court's diversity jurisdiction as set for the in 28 U.S.C. § 1332.

3.  The amount in controversy exceeds $75,000.

4. The unlawful employment practices described herein were committed within Maricopa County, State of Arizona. Accordingly, venue in this Court is proper pursuant to 28 U.S.C. § 1391(b).

## PARTIES

5. Plaintiff Timothy Caziarc (hereinafter "Plaintiff" or "Plaintiff Caziarc"), is a single man and at all times relevant herein resided in Maricopa County, State of Arizona.

6. Plaintiff is considered an employee under the FWHFA.

7. Defendant LGI Homes, Inc. (hereinafter "LGI") is a Delaware corporation with its principal place of business located in the State of Texas.

8. Defendant LGI Homes, Inc. is an employer for the purpose of the FWHFA.

## BACKGROUND

9. Plaintiff was hired by Defendant on about January 3, 2017 as a real estate Sales Manager for LGI Homes and reported directly to his Manager, John Bargnesi, VP of Sales.

10. Plaintiff Caziarc excelled as a Sales Manager and closed more homes than ever (by 21% over the prior year) in a community which was already five years old. Plaintiff Caziarc was the first Sales manager to manage sales representatives to achieve closing twenty home sales deals in 2017 and received the Award for Excellence in Sales in 2017 and was awarded a paid trip to Riviera Maya, Mexico.

11. Plaintiff Timothy Caziarc is a disabled veteran of the Gulf War era.

12. On about July 2018, Plaintiff informed his Manager Mr. Bargnesi, about Plaintiff's upcoming Veterans Administration ("VA") service-connected doctor appointments for medical care. Mr. Bargnesi did not seem happy that Plaintiff would be off work for his doctor appointments during the "goal" session meetings time frame.

13. By about September 2018, Plaintiff Caziarc was awarded VA benefits for his disability relating to the tinnitus medical condition in both his ears. With medical care and treatment Plaintiff was able to continue to successfully perform his work in his Manager position.

14. Following Plaintiff informing LGI Homes of his disability and after Plaintiff made various requests for time off relating to his need for treatment, on about September 28, 2018 Plaintiff was subsequently demoted from Sales Manager to a sales position and moved to a new location, with no prior warnings or write-ups. This occurred notwithstanding his achievements described above and continuing to excel at his position.

15. Plaintiff was made to believe he had no other option but to sign the offer letter or lose his job. Consequently, Plaintiff signed the offer letter to begin his new assignment on October 3, 2018.

16. The new position required Plaintiff to essentially work seven days a week: Monday through Friday, and also work on Saturdays and Sundays. In his new position, Plaintiff now reported to Ms. Tracy Norton.

17. Plaintiff sought help from LGI's Human Resources ("HR") and on October 23, 2018, sent HR an email about his demotion and that he believed the demotion was unfair and unwarranted, due to his successful sales achievements.

18. On October 27, 2018, Mr. Chris Kelly, LGI's President of the West Division, called and spoke with Plaintiff regarding his email. However, Mr. Kelly's tone and line of questioning seemed like an "Exit Interview".

19. Mr. Kelly asked Plaintiff whether Mr. Bargnesi was conducting monthly "goals" session meetings with Plaintiff and Plaintiff said "No." (Conducting these

monthly meetings was required.)  Mr. Kelly continued to question Plaintiff for approximately for 40 minutes.

20. Following the phone interview and despite Plaintiff's sales achievements, Plaintiff remained in his sales position.  Also following this phone interview, Plaintiff's former supervisor Mr. Bargnesi refused to communicate with Plaintiff any longer.

21. Despite the demotion, Plaintiff continued to successfully perform his job in the new sales position and by about November/December 2018 he closed on two more homes in the new Maricopa location community.

22. Plaintiff suffered a right knee ACL tear.  In addition to his tinnitus, Plaintiff had chronic disabling knee and ankle medical issues in connection to his military service. Plaintiff Caziarc saw his doctor on about January 11, 2019, and as part of his physical rehabilitation Plaintiff was placed on a physical rehabilitation plan a couple times a week and was scheduled for surgery for May 9, 2019.

23. Plaintiff was also cleared to return to work with work accommodation restrictions of "no prolonged standing or walking greater than 4 hours a day," up to about July 22, 2019, which would include the post-operative rehabilitation and surgery recovery time.

24. Upon informing his Manager, Tracy Norton about his physical therapy treatment plan, surgery and return to work accommodation restrictions, Ms. Norton told Plaintiff that he could not do physical therapy on Thursdays because it was mandatory that Plaintiff attend Thursday training.

25. Plaintiff learned that on February 23, 2019, Rickey Curley, another sales representative "stole" one of Plaintiff's sales deal.  That evening, Plaintiff informed Ms. Norton *via* text of the situation. Plaintiff talked to Mr. Curley and Ms.  Norton,

and even though it was determined that those customers were Plaintiff's "up" customers, Ms. Norton split the sales commissions and paid Mr. Curley and Plaintiff Caziarc each half of the sales commission.

26. On about March 6, 2019, Plaintiff underwent an endoscopy and colonoscopy medical procedures and was off work a few days from March 6th to March 10th. Also, during this time Plaintiff spoke with Ms. Norton and requested an accommodation for his tinnitus disability and asked for a hands-free headset so he could better hear his work phone conversations.

27. Although, Ms. Norton sent an email to LGI's corporate office and identified Plaintiff's hearing disability and accommodation request, LGI denied Plaintiff's disability accommodation request. Ms. Norton read LGI's corporate email to Plaintiff informing Plaintiff that LGI would not accommodate Plaintiff's disability accommodation request and that he could pay for the headset on his own.

28. In anticipation of being off work for his upcoming knee surgery, Plaintiff focused on his sales performance and during the January – April, 2019 time period he closed on two more home sales and in May 2019, he closed on three home sales.

29. Plaintiff underwent his knee surgery on May 9, 2019 and was on approved medical leave from May 9, 2019 through July 22, 2019 for the surgery, surgery recovery, and post-operative physical therapy. Additionally, due to Plaintiff's medical conditions, on June 27, 2019 the VA awarded Plaintiff additional disability benefits for his service-connected medical conditions relating to his tendonitis disability in both ankles and knees.

30. Upon returning to work on July 22, 2019 with his doctor's work restrictions of no prolonged standing or walking for up to four hours per day at least until August 15, 2019, Defendant LGI denied Plaintiff's disability accommodation request and Plaintiff was forced to continue to work full days (many of which would require Plaintiff to stand

and walk for more than 4 hours a day).  Plaintiff tried to work without the accommodation to the best of his ability.

31. On July 27, 2019, Plaintiff informed his Manager, Ms. Norton about his disability status and work restrictions, provided the VA disability paperwork and discussed Plaintiff's upcoming VA doctors' and rehabilitation appointments.

32. Ms. Norton said, "How do you expect to keep a job with all those doctor appointments?"  Plaintiff attempted to explain the VA's June determination of his medical disability and award of benefits and Ms. Norton did not seem to care and without any true knowledge of Plaintiff's Army service, disrespectfully said, "How can you be disabled you didn't even see combat?"

33. LGI again denied Plaintiff disability accommodation request.  Plaintiff was forced to continue to work full days to the best of his ability.

34. Plaintiff had a follow-up doctor's appointment on July 30, 2019 and prior to this date, Plaintiff coordinated his work shift responsibilities with Ms. Norton and informed her of his doctor's appointments.

35. Plaintiff again told Ms. Norton that due to his disability and doctors' recommendations, that Plaintiff was unable to stand or walk for extended periods of time (more than four hours a day).

36. Ms. Norton ignored Plaintiff's disability and doctor's recommended accommodation and work restrictions and told Plaintiff that he had to show up to work and to "deal with it."

37. On about August 2, 2019 Plaintiff received a phone call from Ms. Monica Heyn, the VA's Orthopedics Supervisor.  Ms. Heyn worked directly with the VA's medical staff and Plaintiff Caziarc's doctor, and informed Plaintiff that Connie Sonier, from LGI's HR had been calling Plaintiff's clinic asking for medical

information about his recent surgery.  Ms. Heyn explained that she learned that Ms. Sonier was given misinformation over the phone by "someone" at the VA (not by Plaintiff's treating doctor), that Plaintiff could work 8 hours, which was inaccurate information and contradicted Plaintiff's treating physician's medical care and written work restrictions.

38.     Ms. Heyn explained that she spoke directly with Ms. Sonier and provided her with accurate information about Plaintiff's work restrictions. Ms. Heyn had also called Plaintiff to inquire if Plaintiff had given permission to release medical information to Ms. Sonier or anyone else (which he had not).

39.     On about Sunday, August 4, 2019,  Ms. Norton restated LGI's work expectations to Plaintiff that it was mandatory that Plaintiff attend Thursday sales trainings/meetings and also mandatory that Plaintiff work Saturdays and Sundays.

40.     Plaintiff again explained that due to his disability he was unable to stand and walk for 10-12 hours each day on the weekend shifts.

41.     Plaintiff's requests for work accommodations for his disability were denied and LGI refused to engage in the interactive process and work with Plaintiff and due to LGI's unwillingness to accommodate Plaintiff's requests for accommodations for his disability Plaintiff Caziarc was not able to work the weekends of August 10-11, and August 17-18, 2019 as Plaintiff would have been required to stand more than 4 hours a day.

42.      On August 22, 2019, Ms. Norton disciplined Plaintiff for attendance on days Plaintiff had requested accommodations for doctor's appointments through the VA, and placed Plaintiff on a Performance Improvement Plan ("PIP").

43. In the PIP, Ms. Norton makes no acknowledgment about Plaintiff's qualified disability, doctor recommended work restrictions, Plaintiff's request for accommodations, or doctors' appointments which factored into the days Plaintiff was absent from work.

44. Ms. Norton only makes a general reference about Plaintiff's knee surgery in the "Supervisor Action Plan" section and speciously writes, "Tracy Norton will be flexible as it relates to Tim's knee surgery rehabilitation."

45. In spite of LGI's denial of Plaintiff's request for disability accommodations, Plaintiff continued to successfully perform his job. In or around October 2019, Plaintiff closed on four of his home sales deals, was salesperson of the month for October, and also met all the criteria to complete the PIP as Plaintiff sold seven homes. Also, out of nineteen sales representatives in Arizona, Plaintiff was ranked fourth on the list for most sales closings in the entire State.

46. On about October 26, 2019, Rickey Curley again "stole" another sales deal from Plaintiff.

47. On October 31, 2019, Plaintiff reported Mr. Curley's misconduct to Ms. Norton, restating Mr. Curley had previously done the same to Plaintiff. Ms. Norton became furious with Plaintiff and starting yelling at Plaintiff for bringing this matter up and for waiting four days to bring this up.

48. The delay in bringing the matter up was that LGI had trained Plaintiff to not report anything negative during the weekends because the weekends were selling days, so Plaintiff waited the four days. Also, Plaintiff wanted to keep focused on selling and not let this distraction get in the way of other potential sales.

49. On November 7, 2019, Ms. Norton called Plaintiff into her office and terminated Plaintiff allegedly for performance and no other reason was given.

50. When Plaintiff asked about his five sales deals on the board for the rest of the month, Ms. Norton said "they go back to LGI…and you don't get paid."

51. The five deals in Plaintiff's pipeline along with three customers he was about to put under contract on homes which would close by end of year, Plaintiff had estimated commissions of approximately $54,500 that would close by year-end. Moreover, this did not take into account any other sales that may have been completed in the last two months of the year.

52. Plaintiff excelled in his sales from 2017 up through his termination on November 7, 2019. At the time of his termination, Plaintiff was the salesman of the month for October, and with the homes sales Plaintiff closed and the pending homes sales in his pipeline, Plaintiff was on a trajectory to have more than 20 homes sales closed for the calendar year.

53. Plaintiff continued to excel in his job even with the time-off from work for his physical therapy and doctors' appointments for his disability which totaled approximately 2 1/2 months during 2019.

54. Additionally, LGI retained a number of non-disabled sales representatives whose sales figures were well below Plaintiff's sales figures even though Plaintiff was off for several months due to his disability and use of sick leave. To best of Plaintiff recollection no other sales representatives were terminated in 2019 in Arizona.

## COUNT ONE

**(Violation of the Fair Wages and Healthy Families Act- A.R.S. §23-374)**

55. By reference hereto, Plaintiff hereby incorporates all prior paragraphs as if fully alleged herein.

56. Arizona passed the FWHFA on November 8, 2016, in part to provide protections for employees who utilize protected sick leave.

57. Part of the action provides against retaliation of those employees who utilize protected sick leave and provides in A.R.S. §23-374 that "an employer shall not engage in retaliation or discriminate against any employee or former employee because the person has exercised rights protected under this article. Such rights include but are not limited to the right to request or use earned paid sick time…"

58. The statute further provides it is "unlawful for an employer's absence control policy to count earned paid sick time taken under this article as an absence that may lead to or result in discipline, discharge, demotion, suspension, or any other adverse action."

59. The Arizona Sick Leave Law gives employees essentially unfettered rights to take a day or two of sick time as needed without explanation.  See A.R.S. §23-374.

60. When an employer takes an adverse action against an employee within 90 days of the employee asserting a right under the Act, retaliation against the employee will be presumed.

61. Plaintiff utilized Arizona's Sick Leave Law on August 10-11, 2019, and August 17-18, 2019 and was retaliated against when he was disciplined on August 22, 2019 for attendance and terminated for alleged poor performance on November 7, 2019.

62. As commissioned salespeople Defendant LGI did not even have a sick leave policy that conformed to the statutory requirements.

63. Defendant LGI's conduct violates A.R.S. §23-374.

64. Defendant's conduct constitutes a willful violation of A.R.S. §23-374.

65. As a direct result of Defendant's violation of A.R.S. §23-374, Plaintiff has suffered adverse action including termination and is entitled to an award of any and all remedies and penalties as set forth in A.R.S. §23-364 including but not limited to lost wages, statutory penalties, compensatory damages, and attorneys' fees.

66. In light of Defendant's violation of A.R.S. §23-374, as a penalty and deterrent, Plaintiff is entitled to payment of no less than $150 day from the date of the violation of A.R.S. §23-374 until the date a final Judgment is entered.

67. As a result of Defendant's actions, Plaintiff is entitled to recover attorney's fees.

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

1. Any and all equitable relief necessary to correct and alleviate Defendant's discriminatory and retaliatory conduct in the future;

2. For General and Special damages to be proven at trial;

3. For compensatory damages relating to emotional distress as proven at trial;

4. For exemplary or punitive damages to be proven at trial;

5. Statutory penalties for violation of A.R.S. §23-374 of no less than $150 per day since the retaliatory termination of Plaintiff's employment;

6. For reasonable attorneys' fees and costs; and

7. For such other relief, the Court deems appropriate.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial.

DATED this 5th day of November, 2021.

**SCHLEIER LAW OFFICES, P.C.**

/s/ Bradley H. Schleier
Bradley H. Schleier
3101 North Central Ave., Suite 1090
Phoenix, Arizona 85012
Brad@SchleierLaw.com
Telephone: 602-277-0157
*Attorneys for Plaintiff Timothy Caziarc*